UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| SHERRON R. BATTLE,<br><br>       Plaintiff,<br><br>v.<br><br>MILWAUKEE COUNTY,<br><br>       Defendant. | Case No. 15-CV-684-JPS<br><br><br><br><br><br>ORDER |

    On June 8, 2015, the plaintiff, Sherron R. Battle ("Battle"), filed a *pro se* complaint alleging that she was terminated from her employment at the Milwaukee County Behavior Health Division ("BHD") because of her disability and race. (Docket #1). She also sought leave to proceed *in forma pauperis*. (Docket #1). However, because that complaint did not state a claim upon which relief could be granted (Docket #3), Battle, with the assistance of counsel, filed an amended complaint (Docket #4), which was also dismissed because it named a non-suable entity as a defendant. (Docket #6). On September 8, 2015, Battle cured this defect by naming Milwaukee County in a second amended complaint. (Docket #7).

    Upon the screening of Battle's second amended complaint pursuant to 18 U.S.C. § 1915, the Court granted Battle's motion to proceed *in forma pauperis*. (Docket #8). In addition, the Court allowed Battle to proceed on: (1) a failure to accommodate claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(b)(5)(A); and (2) a race discrimination claim under Title VII, 42 U.S.C. § 2000e–2(a)(1). (Docket #8).

    The defendant, Milwaukee County, has moved to dismiss Battle's claims on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

(Docket #14). That motion is now ripe for adjudication. (*See* Docket #16, #20, #21).

As described more fully below,[1] the Court must construe Milwaukee County's motion as one for summary judgment. *See* FED. R. CIV. P. 12(d). Under that standard, the Court will grant Milwaukee County's motion with respect to Battle's Title VII claim, and will deny Milwaukee County's motion with respect to Battle's ADA claim. (Docket #14).

1. BACKGROUND[2]

In May of 2008, Battle was diagnosed with Type II diabetes. (Docket #7 ¶ 5). Two years later, she began employment with BHD as a certified nursing assistant. (Docket #7 ¶ 3). Battle claims that she disclosed her medical condition to Milwaukee County on a pre-employment medical evaluation form. (Docket #7 ¶ 7). On that form, it states that Battle checked her blood sugar once per day and took a pill for her diabetes. (Docket #15, Ex. 1 at 2). Despite being provided the opportunity on the form, Battle did not request

---

[1]The Court must construe Milwaukee County's motion as one for summary judgment, *see* FED. R. CIV. P. 12(d), because the arguments that Milwaukee County makes in support of its motion rely on evidence outside of the operative pleadings. (Docket #16); *see also Omega Healthcare Investors, Inc. v. Res–Care, Inc.*, 475 F.3d 853, 856 n. 3 (7th Cir. 2007). Specifically, Milwaukee County relies extensively on the exhibits attached to Battle's original complaint. (*See* Docket #16 at 6-16). However, the original complaint is not the operative pleading in this matter. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1057 (7th Cir. 1998) ("The amended complaint became, upon its submission, the operative complaint in the case; the original filing no longer controlled the litigation."). As such, the Court must construe Milwaukee County's motion as one arising under Rule 56. FED. R. CIV. P. 12(d).

[2]As the Court must construe Milwaukee County's motion as one for summary judgment, the Court will rely on evidence both within and extrinsic to the operative pleadings. *See, e.g., Church v. Gen. Motors Corp.*, 74 F.3d 795, 798 (7th Cir. 1996) (finding it appropriate to construe a motion as one for summary judgment where the parties directed the court to evidence outside the pleadings).

any "work restrictions" or any "accommodations" based on her diabetes. (Docket #15, Ex. 1 at 1-3).

Nonetheless, Battle alleges that at various times between June of 2011 and August 2012 she told "multiple" colleagues and her immediate supervisor, nurse Jim, that she "might occasionally need to take breaks, check her blood sugar level and eat when she became dizzy or lightheaded." (Docket #7 ¶¶ 8-9; Docket #20, Ex. 1 ¶ 6). In response, nurse Jim allegedly told Battle "just to tell him whenever [she] needed to eat or to take a break." (Docket #20, Ex. 1 ¶ 6).

On August 23, 2014, Battle was given the task of escorting a patient to the Froedtert Eye Institute. (Docket #7 ¶ 10). The patient was a 72-year-old visually impaired female with a seizure disorder. (Docket #1, Ex. 3 at 8, 12, 48, 78). This patient presented both a fall risk and an elopement risk. (Docket #1, Ex. 3 at 8, 12, 48, 78).

At some point during the patient's eye appointment, Battle began to feel sick and dizzy. (Docket #7 ¶ 11; Docket #1, Ex. 4 at 9-10). Upon feeling sick and dizzy, Battle ate hard candy to stabilize her blood sugar. (Docket #1, Ex. 4 at 10). Battle then claims to have immediately proceeded to transport the patient, who was in a wheelchair with a lap buddy and chair alarm, to the Froedtert cafeteria so that she could order food. (Docket #1 ¶ 11; Docket #1, Ex. 3 at 12, 78; Docket #1, Ex. 4 at 10-11). The cafeteria is in a separate building about five blocks from the Froedtert Eye Institute. (Docket #1, Ex. 3 at 8, 18, 78).

While at the cafeteria, Battle left the patient sleeping at a table and proceeded to the Cafeteria Grill. (Docket #7 ¶ 11). Battle alleges that the patient was in view at all times (Docket #7 ¶ 11) and that her need for food was a "medical necessity" (Docket #7 ¶ 14). During this time, Battle did not

call BHD, but instead ate her food and then returned with the patient after finishing the meal. (Docket #1, Ex. 4 at 11).

Following this incident, Battle was suspended for five days. (Docket #7 ¶ 13). She claimed, however, that she did not violate work rules and that BHD was not consistent in enforcing those rules. (Docket #7 ¶¶ 14-15). Rather, she claims that she was fired based on her race and because BHD failed to accommodate her diabetes. (Docket #7 ¶¶17-22).

On August 27, 2012, BHD filed with the Milwaukee County Personnel Review Board ("PRB") Written Charges for Discharge against Battle for violating Milwaukee County Civil Service Rules. (Docket #1, Ex. 3 at 18) (outlining the following charges: (1) "[v]iolations of rules or practices relating to safety"; (2) "[r]efusing or failing to comply with departmental work rules, policies or procedures"; (3) "[f]ailure or inability to perform the duties of assigned position"; (4) "[s]ubstandard or careless job performance"; and (5) "[e]ngaging in personal activities during working hours."). On March 19, 2013, the PRB held a disciplinary hearing, at which Battle was represented by counsel. (Docket #1, Ex. 3 at 72-80). At that hearing, the PRB heard three disciplinary matters involving Battle: (1) a 2-day suspension filed on May 29, 2012. based on Battle's failure to renew her certification; (2) a 5-day suspension filed on July 7, 2012, based on Battle's failure to properly monitor a one-on-one patient; and (3) the Written Charges for Discharge filed on August 27, 2012, based on Battle's failure to properly monitor a one-on-one patient. (Docket #1, Ex. 3 at 72-80). After hearing the cases, the PRB concluded that the evidence presented was sufficient to sustain the allegations in each case and imposed the recommended discipline, which resulted in Battle's discharge. (Docket #1, Ex. 3 at 78-80).

Acting *pro se*, Battle appealed the PRB's decision on a writ of certiorari in Milwaukee County Circuit Court Case No. 2013-CV-011710. (Docket #1, Ex. 3 at 9-10). Milwaukee County intervened in the writ to defend the PRB's decision. (Docket #1, Ex. 3 at 37-51). The Honorable Daniel A. Noonan, Circuit Court Judge, denied the writ and affirmed the PRB's decision to issue the 2-day suspension and the 5-day suspension, and to discharge Battle from employment with Milwaukee County. (Docket #15, Ex. 2).

On June 13, 2013, Battle filed a charge of disability discrimination with the Wisconsin Department of Workforce Development–Equal Rights Division ("ERD"), which was cross-filed with the U.S. Equal Employment Opportunity Commission ("EEOC"). (Docket #1, Ex. 3 at 3-6; 81-84). On March 20, 2015, Battle filed a charge of race discrimination with the EEOC. (Docket #1, Ex. 3 at 7; Docket #1, Ex. 2 at 1). The EEOC determined that the evidence it reviewed did not support Battle's disability discrimination charge (Docket #1, Ex. 2 at 2-3), and the EEOC closed its file on the race discrimination charge because it was not timely filed (Docket #1, Ex. 2 at 1).

Battle initiated this action on June 8, 2015. (Docket #1). The Court has since permitted Battle to proceed on: (1) a failure to accommodate claim under the ADA; and (2) a race discrimination claim under Title VII. (Docket #8 at 4).

2. LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c); *see also Bartlett v. City of Chicago Sch. Dist. #299*, 40 F. Supp. 3d 959, 963 (N.D. Ill. 2014) ("A Rule 12(c) motion for judgment on the pleadings permits a party to move for judgment after both the plaintiff's complaint and the defendant's answer have been filed."). When ruling on a 12(c) motion, the

Court must "take the facts alleged in the complaint as true, drawing all reasonable inferences in favor of the plaintiff." *Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007).

Traditionally, a Rule 12(c) motion attempts to dispose of a case based on its substantive merits. *See Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993). In such a case, the operative summary judgment standard controls, except that the Court may consider only the contents of the pleadings, which "include[s] the complaint, the answer, and any written instruments attached as exhibits." *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998).

However, when *extrinsic evidence outside* the pleadings is relied upon in pursuit of a Rule 12(c), courts must either: (1) convert the motion into one for summary judgment under Rule 56; or (2) exclude the documents attached to the motion to dismiss and continue under Rule 12(c). *See* FED. R. CIV. PRO. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."); *see also Omega Healthcare Investors, Inc.*, 475 F.3d at 856 n. 3; *Loud Records LLC v. Minervini*, 621 F. Supp. 2d 672, 675 (W.D. Wis. 2009). "On summary judgment, a party is entitled to judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Omega Healthcare Investors, Inc.*, 475 F.3d at 857 (citing FED. R. CIV. P. 56). The Court must "view all facts and draw all inferences in the light most favorable to the non-moving party." *Id.*

Page 6 of 13
Case 2:15-cv-00684-JPS   Filed 03/02/16   Page 6 of 13   Document 22

3.     ANALYSIS

Pursuant to Rule 12(c), Milwaukee County moves to dismiss both of Battle's claims. (Docket #14). Notwithstanding its motion, because Milwaukee County relies on evidence outside of the operative complaint, answer, and documents incorporated by reference thereto, the Court must construe Milwaukee County's arguments as proceeding under Federal Rule of Civil Procedure 56. (Docket #16); FED. R. CIV. PRO. 12(d).

3.1    Title VII Claim

Battle alleges that BHD violated Title VII by terminating her employment on the basis of her race. (Docket #7). However, Milwaukee County argues that Battle's claim is barred because Battle failed to file a timely EEOC charge of race discrimination. (Docket #16 at 1). The Court concludes that there is no genuine issue of material fact that Battle's claim is time-barred because she did not file a timely complaint with the EEOC or ERD, and, as such, her Title VII claim will be dismissed.

"In order to bring a Title VII action in federal court, a Wisconsin plaintiff must file a charge of discrimination with the EEOC or the…ERD… within 300 days 'after the alleged unlawful employment practice occurred.'"[3] *Ferrill v. City of Milwaukee*, 295 F. Supp. 2d 920, 923 (E.D. Wis. 2003) (citing 42 U.S.C. § 2000e-5(e)). "Filing a timely charge with the EEOC is not a jurisdictional prerequisite to suit in federal court; rather, it is an affirmative defense akin to administrative exhaustion." *Salas v. Wisconsin Dep't of Corr.*,

---

[3] As explained by the court in *Ferrill*, "[f]or purposes of the statute of limitations, Wisconsin is a 'deferral state,' *i.e.*, one with its own anti-discrimination laws and state agency empowered to investigate alleged violations of those laws and grant relief. In such states, the plaintiff has 300 days within which to file with the agency. In non-deferral states, the limitations period is 180 days." *Id.* at 923 n. 2 (citing 42 U.S.C. § 2000e-5(e)).

493 F.3d 913, 921 (7th Cir. 2007). This 300-day statute of limitations is not without exception, however, as it is subject to certain tolling mechanisms, including the discovery rule, equitable tolling, and equitable estoppel. *See Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450-51 (7th Cir. 1990).

In order to determine whether a Title VII claim is time-barred, the Court must: (1) "identify the unlawful employment practices alleged and the dates on which these practices occurred"; and (2) "determine if the ERD or EEOC charge was filed within 300 days after the allegedly unlawful conduct." *Stepney v. Naperville Sch. Dis.* 203, 392 F.3d 236, 239-41 (7th Cir. 2004). Dismissal is appropriate if there is no "genuine dispute as to whether the claims accrued" more than 300 days before the charge was filed. *Id*

Here, Battle did not respond to Milwaukee County's argument that her Title VII claim is time-barred under 42 U.S.C. § 2000e-5(e). (*See* Docket #20). However, the undisputed facts show that the allegedly unlawful practices of which Battle complains occurred on August 23, 2012—the date that Battle was suspended for the incident in question—and/or March 19, 2013—the date that Battle was discharged. (Docket # 7 ¶ 10; Docket #1, Ex. 3 at 1). Moreover, Battle filed her charge of race discrimination with the EEOC on March 20, 2015, which is 731 days *after* the latest date in which the allegedly discriminatory conduct occurred. (Docket #1, Ex. 3 at 7). Thus, because the facts conclusively establish that Battle did not file a timely EEOC and/or ERD charge of race discrimination, Battle's claim must be dismissed as a matter of law. *See* 42 U.S.C. § 2000e-5(e); (*see also* Docket #1, Ex. 2 at 1) (demonstrating that on March 26, 2015, the EEOC itself dismissed this charge as untimely).

### 3.2 ADA Claim

Battle also claims that Milwaukee County is liable to her because it failed to accommodate her diabetes disability. (Docket #7 ¶¶ 17-19). Milwaukee County argues that Battle's ADA claim must be dismissed because: (1) Battle never requested accommodations for her disability; (2) Battle does not allege that Milwaukee County failed to engage in an interactive process to develop appropriate accommodations; (3) even if Battle requested accommodations, BHD reasonably complied with those requests; and (4) Battle's misconduct was a reasonable ground to terminate her, notwithstanding her disability. (*See* Docket #16 at 8-16). For the reasons outlined below, the Court concludes that issues of fact preclude dismissal of Battle's ADA claim and, thus, Milwaukee County's motion with respect to this claim will be denied. (Docket #14).

The ADA requires employers to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." 42 U.S.C. § 12112(b)(5)(A). "To establish failure to accommodate, [the plaintiff must] present evidence that: (1) [s]he is a qualified individual with a disability[;] (2) [the defendant] was aware of h[er] disability[;] and (3) [the defendant] failed to reasonably accommodate h[er] disability."[4] *Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 851 (7th Cir. 2015).

---

[4]Milwaukee County does not appear to dispute that Battle was a qualified individual under the ADA. (Docket #16). Rather, it disputes that Battle's claim satisfies the second and third prongs of this test. (Docket #16 at 8-16).

"The ADA's reasonable accommodation requirement applies only to 'known' disabilities." *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1176 (7th Cir. 2013) (42 U.S.C. § 12112(b)(5)(A)). The Seventh Circuit "ha[s] consistently held that disabled employees must make their employers aware of any non-obvious, medically necessary accommodations with corroborating evidence such as a doctor's note or at least orally relaying a statement from a doctor, before an employer may be required under the ADA's reasonableness standard to provide a specific modest accommodation the employee requests." *Ekstrand v. Sch. Dist. of Somerset*, 583 F.3d 972, 976 (7th Cir. 2009); *see also Beck v. Univ. of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996) ("By the statutory language, 'reasonable accommodation' is limited by the employer's knowledge of the disability.") (internal citations omitted).

Under the ADA, an employer must make "reasonable accommodations" to a disabled employee's limitations, unless the employer can demonstrate that to do so would impose an "undue hardship." 42 U.S.C. § 12112(b)(5)(A); *see also Cloe*, 712 F.3d at 1176 ("Once the employer has been put on notice, the employer must take reasonable steps to accommodate the employee's disability."). Reasonable accommodations are "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable [a qualified] individual with a disability...to perform the essential functions of that position[.]" 29 C.F.R. § 1630.2(o)(1)(ii). "'The duty of reasonable accommodation is satisfied when the employer does what is necessary to enable the disabled worker to work in reasonable comfort.'" *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 803 (7th Cir. 2005) (quoting *Vande Zande v. Wis. Dep't of Admin.*, 44 F.3d 538, 546 (7th Cir. 1995)). "The employer must be willing to consider making changes in its ordinary work rules,

facilities, terms, and conditions in order to enable a disabled individual to work." *Vande Zande*, 44 F.3d at 543. In this sense, "[a]n accommodation is something concrete—some specific action required of the employer." *Beck*, 75 F.3d at 1135; *see also Siefken v. Village of Arlington Heights*, 65 F.3d 664, 666 (7th Cir. 1995) (a "second chance" is not an "accommodation").

"Once an employee requests a reasonable accommodation, the employer must meet the employee half way and engage in a flexible, interactive process to identify the necessary accommodations." *Reeves ex rel. Reeves v. Jewel Food Stores, Inc.*, 759 F.3d 698, 701-02 (7th Cir. 2014) (internal citations omitted). "Both parties are responsible for determining what accommodations are needed," *id.*, and "the employer and the employee must work together…to determine the extent of the disability and what accommodations are appropriate and available," *Sears, Roebuck & Co.*, 417 F.3d at 804. "Where notice is ambiguous as to the precise nature of the disability or desired accommodation, but it is sufficient to notify the employer that the employee may have a disability that requires accommodation, the employer must ask for clarification." *Id.* "In other words, an employer cannot shield itself from liability by choosing not to follow up on an employee's requests for assistance, or by intentionally remaining in the dark." *Id.* However, "[w]here the employee does not provide sufficient information to the employer to determine the necessary accommodations, the employer cannot be held liable for failing to accommodate the disabled employee." *Reeves ex rel. Reeves*, 759 F.3d at 701-02.

At this juncture, the Court cannot conclude that Milwaukee County is entitled to judgment as a matter of law with respect to Battle's ADA claim. Specifically, the Court remains unclear as to the extent of Milwaukee

County's knowledge regarding Battle's disability. On the one hand, the record suggests that Battle engaged in some conversation with BHD employees regarding her diabetes. (Docket #7 ¶¶ 7-9). Battle also alleges she informed her supervisor, nurse Jim, that: (1) she suffered from diabetes; and (2) as a result of that condition, may need to take occasional breaks, check her blood sugar, and eat when she became dizzy or lightheaded. (Docket #7 ¶ 9). The exact content and result of these discussions, however, has not been fully fleshed out. (Docket #7 ¶¶ 7-9; Docket #20, Ex. 1 ¶¶ 3-6). Moreover, Battle does not appear to have followed any formal process or submitted formal notice of her disability and/or requested accommodation. (Docket #15, Ex. 1 at 1-3).

Without a more developed factual record as to the extent of BHD's knowledge regarding Battle's condition, the Court simply cannot determine whether any of BHD's alleged accommodations were appropriate. This is particularly important because Battle suggests that her need to take a break and eat food on the day in question was "immediate." (Docket #20, Ex. 1 ¶¶ 11-12). This fact may, or may not, explain why Battle failed to call BHD to request a break at any time during the incident in question. (Docket #16 at 12; Docket #20, Ex. 1 ¶¶ 11-12). In addition, scheduling Battle for a double shift and/or assigning her to an escort duty may or may not have been "reasonable" if Battle had somehow informed BHD of the time sensitive nature of her medical problems. (Docket #20, Ex. 1 ¶ 10).

In sum, the Court concludes that there is a genuine issue of fact regarding: (1) the extent to which BHD "knew" about the nature of Battle's conditions; and (2) whether, in light of her particular condition, BHD indeed provided reasonable and appropriate accommodations. Thus, Battle's ADA claim will not be dismissed at this time.

4. CONCLUSION

Battle is undisputedly time-barred from pursuing her Title VII claim. However, the Court finds the wiser exercise of discretion is to allow further discovery on Battle's ADA claim so that factual development relative to: (1) the extent of BHD's notice about Battle's disability; (2) the manner in which Battle was accommodated; and (3) the reasonableness of the alleged accommodations, may be addressed.

Accordingly,

IT IS ORDERED that Milwaukee County's motion to dismiss (Docket #14) be and the same is hereby GRANTED in part insofar as Battle's Title VII claim will be dismissed and DENIED in part insofar as Battle's ADA claim will not be dismissed.

Dated at Milwaukee, Wisconsin, this 2nd day of March, 2016.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge